In re MULLETT et al.
No. 2076.

District Court, W. D. Missouri,
Central Division.

April 25, 1945.

D. F. Calfee and Scott Peters, both of Jefferson City, Mo., for debtors.

Gardner Smith, of Patterson, Chastain & Smith, all of Kansas City, Mo., for Union Central Life Ins. Co.

REEVES, District Judge.

This is a proceeding under the provisions of Title 11 U.S.C.A. § 203, sub. s, relating to the general subject of Relief of Debtors. Said Section 203 refers to Agricultural Compositions and Extensions. Conciliation commissioners are provided for by said section and at a certain stage of the proceeding such conciliation commissioners become referees in bankruptcy.

The question for decision in this case is whether a determination of value by the conciliation commissioner, or referee, should be accepted and approved. The debtors heretofore endeavored to secure the compositions and extensions provided under the statute. Apparently they were unable to obtain the acceptance of a majority in number and amount of their creditors and sought further relief under the special provisions of subdivision s of said Section 203.

In accordance with the provisions of said subsection, the farm of the debtors was appraised. The debtors having evinced a purpose to pay into court the amount of the appraisal, the mortgagee, the Union Cen-

tral Life Insurance Company, petitioned for a reappraisal as it was authorized to do under paragraph 3 of said subsection s, as follows:

"Provided, That upon request of any secured * * * creditor * * * the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, * * *."

The conciliation commissioner, or referee, upon such petition granted a hearing, received evidence, and undertook to "fix the value of the property in accordance with the evidence submitted." The amount fixed by him was $7,500. The Union Central Life Insurance Company, as a secured creditor, has filed its petition to review the order of the conciliation commissioner, or referee, on the ground that the conciliation commissioner, or referee, erred in the exclusion of testimony which the petitioner says was competent and material on the issue of value, and that the referee refused to give consideration to other testimony legally and regularly admitted. Moreover, it is the contention of the petitioner that the value fixed by the conciliation commissioner, or referee, was not supported by any testimony in the record.

The entire matter has been reviewed, including the pleadings, as well as the evidence which has been transcribed and submitted, with the record and the briefs of the parties.

The farm is owned by the two farmer-debtors, is located in Cooper County, Missouri, and consists of 280 acres. In September, 1929, the debtors applied to the petitioner for a loan on their farm in the sum of $10,000, and, at that time, submitted their own estimate as well as the appraisals of local freeholders as to its value. The value then given in round figures was $28,000, whereas the freeholders gave it as their opinion that 250 acres were worth $100 per acre and 30 acres $75 per acre. This made an aggregate of $27,250. The loan then applied for was to supplant another in the same amount. The application was addressed to the petitioner and the loan was recommended by a financial correspondent of the petitioner in the said amount of $10,000. The loan was for a

period of ten years. It was not paid at maturity and a proceeding under the above section of the statute was instituted by the farmer-debtors. Late in the year 1942 the farm was appraised at $7,000, and such appraisal was approved at a hearing in January, 1943. In January of this year (1945) the farmer-debtors expressed a desire to pay into court for redemption the amount of the appraisal, namely $7,000. Thereupon the petitioner, the mortgagee, requested a hearing and a new determination as to the value. Such determination was to be made by the conciliation commissioner, or the referee. Many witnesses were called, both by the petitioner and by the debtors. The evidence on the part of the petitioning creditor showed the value of the farm to be approximately $9,800 to $11,200. This variation occurred in estimates made by the witnesses on the basis of $35 to $40 per acre. The preponderance of the testimony on behalf of the petitioning creditor was that the fair market value of the farm at the time of this hearing was $40 per acre, or $11,200.

On the other hand, witnesses on behalf of the debtors placed the value from $5,040 to $5,600. The preponderance of the testimony on behalf of the debtors was that the farm was worth $5,600. Neither of the debtors personally gave evidence as to the value of the farm.

Witnesses for the petitioning creditor had wide and profitable experience in land appraisals and were not only familiar with the farm in question but had made observations on the sales of similar property nearby. They considered it an average farm of the type in Cooper County and with a productivity that checked favorably with the productivity of similar farms in that area. They were in practical accord that farm lands in that vicinity had materially increased in value in the last two or three years and that farm products in like manner had considerably increased in value.

The witnesses for the debtors were disposed throughout their testimony to depreciate the value of the farm. They disparaged its productivity, pointed to its erosive qualities and indicated that it had been subject to devastating erosions from the flow of surface water.

James N. Mullett, one of the debtors, was called as a witness by the petitioning creditor. He admitted the execution by him and his brother of the application for

the loan dated September 12, 1929. He did not undertake to explain why so great a depreciation had occurred on the farm between September 12, 1929 and January, 1945, a period of more than fifteen years. He and his brother had occupied the farm during that time and had been actively engaged in farming activities on this and other farms rented by them. In fact the referee was inclined to discourage any inquiry concerning conditions existing 15 years ago.

The petitioning creditor offered statistical data prepared by the government, or government agencies, showing the increase of land values, particularly in Missouri. This was excluded, and, in like manner, the referee excluded market statistics showing the general increase in the value of farm products. The conciliation commissioner, or referee, in his order, said:

"Under the evidence presented the value of the real estate involved described in the petition and in the schedules filed herein is found by the Commissioner to be $7,500.-00."

No other findings of fact were made, nor was there a statement of conclusions of law, as this was the only issue before the commissioner, or referee.

Other facts will be stated in the course of this memorandum opinion.

■ 1. As a basis or postulate for considering a case of this kind where a determination of values is involved, it is fundamental that:

"In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. Brooks-Scanlon Corporation v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L.Ed. 934. The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof." Olson v. United States, 292 U.S. 246, loc.cit. 257, 54 S.Ct. 704, loc.cit. 709, 78 L.Ed. 1236.

It will be noted from the foregoing that a broad basis in law is laid for the presentation of proofs touching the value of property as in a case of this character.

■ 2. The court, in reviewing the case, must keep in mind the provisions of General Order in Bankruptcy No. 47, 11 U. S.C.A. following section 53. Such order is applicable and is controlling in cases such as this. General Order No. 47 refers to Reports of Referees and Special Masters. It is provided:

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

The first question obtruding itself in these considerations is whether the learned conciliation commissioner, or referee, "clearly" erred in his findings of fact. The witnesses on behalf of the debtors fixed the value of the farm at not more than $5,600. Apparently the referee rejected that testimony, as well he might in view of all other facts, as not reliable and as not constituting a satisfactory basis for determination of the value of the property. It is obvious from the report of the referee that he leaned wholly upon the testimony of the witnesses and their judgment as to the value of the premises. The referee's finding was that the property, under the evidence, was worth $7,500. Such a finding was not supported by the testimony of the debtors. On the other hand, the learned referee did not accept the valuation placed by the witnesses for the petitioning creditor. Under such circumstances he reached a figure not supported by any of the evidence. In view of this finding, the court is obliged to reject the appraisal made by the referee as not having support in the evidence.

■ 3. The referee rejected as irrelevant evidence the application of the debtors for the loan made by the petitioner. This application was dated September 12, 1929. It was not only descriptive of the property and its improvements but the estimate then made by the debtors as to the value of the property was supported by freeholders of the community. The value then given was, in round figures, $28,000.

James N. Mullett was called as a witness by the petitioning creditor. He identified his application and admitted it was executed at the time indicated. He offered no explanation as to the decrease in value between the date of the application and the date of the hearing before the referee. The value of a farm would not ordinarily decrease from $28,000 to $5,600 unless there was a good reason for it. It would have been an easy and a simple matter for the debtors to have pointed out in what

way the farm had so greatly depreciated in value. It is true he said that several heavy rains had seriously eroded the farm. He indicated that he had not tried to "ruin" the farm but the inference from his testimony is that he had not tried to preserve it. It does not appear that a debtor, who, in obtaining the loan, had given his property so great a value, should be permitted to claim such an enormous depreciation without some explanatory statement satisfactory to the trier of the facts. Since the application was for the loan now held by the petitioner, admittedly it was competent as a basis, at least, for an inquiry as to what had happened to the land that would cause its extreme depreciation. The referee should have received such testimony and given consideration to it. Again, the referee rejected statistical evidence compiled by the goverment with respect to the general increase in farm values. Such evidence should have been admitted. Furthermore, the referee rejected evidence of market reports on farm commodities, which reports were offered to support the contention that farm products had greatly enhanced in value in the last few years. This was competent evidence. The witnesses said these were important factors in determining market values. In fact, it is a matter of common knowledge that farm prices on farm products have advanced, and, like the recent great depression, they are such contemporaneous outstanding facts as to impress themselves upon the court even without proof. Concerning the productivity of the farm in question, there was evidence that the debtors were entirely familiar with the rating given their farm by government authorities and that it was referred to as an "average" with other farms of the same character in Cooper County. These facts would tend to gainsay and contradict the evidence of the witnesses produced by the debtors. In reference to said witnesses, their testimony indicated a studied and planned purpose to depreciate the value of the farm to the disadvantage of the petitioning creditor and to the advantage of the debtors. It does not seem reasonable that neighbors, familiar with the land in question, should be at so great a variance between the fair and reasonable market value of the farm. Such values ran from $5,040 to $11,200, and even more.

It is the duty of courts to frown upon such testimony and in every way to express disapproval of a course so obviously designed, notwithstanding the fact that the witnesses were under the sanction of solemn oaths. It was the duty of the debtors in their farming operations not to stand idly by and with purposeful neglect permit their farm to fall into the decay they now so extravagantly claim. They owed an obligation to their creditor to preserve the security and to manage their farm in a husbandly way. Comment should be made here upon the fact that their first and one of their important witnesses who testified on behalf of the debtors, while denying under oath that he was under guardianship, yet undisputable proof has been presented that he was under guardianship for incompetency by reason of the intemperate use of intoxicants, and that such guardianship was continuing at the date he gave his testimony.

4. General Order in Bankruptcy No. 47 further provides:

"The judge after hearing may adopt the report or modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

Upon the evidence, the court could not properly adopt the report of the referee. The facts now before the court are ample to warrant a modification of the report. It would be a waste of time and a useless gesture to take further testimony or to recommit with instructions to the referee. The interest on the loan has probably been paid. The note held by the petitioning creditor is in the face amount of $10,000. The evidence would fully justify the court in finding that the value of the farm is $11,200. For the purpose of redemption, the value should be fixed at the face amount of the note, as that apparently is all that the debtors would have to pay in order to redeem it. Accordingly, the value fixed by the referee will be modified and fixed by the court at $10,000, and it will be so ordered.